**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SOUTHEAST CRANE INSPECTIONS, LLC;** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **CIVIL ACTION NO.16-00392-KD-B** |
| **CHAUCER CORPORATE CAPITAL(NO.3) LIMITED,** | * | |
| **Defendant.** | * | |

**Report and Recommendation**

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Plaintiff's Motion to Remand to State Court and Motion for Attorney Fees and Costs. (Docs. 5, 7). The motions have been fully briefed, and a hearing was conducted on August 30, 2016, with counsel for all parties in attendance. Based upon representations of counsel at the hearing, and a review of the motion, and the supporting and opposing briefs and materials, the undersigned **recommends** that the motion to remand be **granted**, that the motion for fees be **denied**, and that this case be **remanded** to the Circuit Court of Hale County, Alabama.

**I. Background**

Plaintiff Southeast Crane Inspections, LLC (hereinafter "Plaintiff" or "SCI") filed suit in the Circuit Court of Hale County, Alabama against Certain Underwriters at Lloyd's of

London. (Doc. 1-1). In the complaint, SCI asserts that it secured an errors and omissions insurance policy with a $1,000,000 limit (policy No. LEO 000 3114) through Lloyd's of London, and that Lloyd's of London breached the insurance contract by failing to resolve an underlying wrongful death case against it, thereby resulting in a substantial excess verdict being entered against SCI. (Id.)

Chaucer Corporate Capital (No.3) Limited removed this action to this Court. (Doc. 1). In its Limited Notice of Removal, Chaucer Corporate Capital (No.3) Limited (hereinafter "Chaucer") asserts that "Certain Underwriters at Lloyd's London" is not a legal entity, and that Chaucer is the proper Defendant because it is the lead underwriter on Plaintiff's policy, and its share of the total risk on the policy is 38%, which exceeds the jurisdictional amount. According to Chaucer, complete diversity exists because Plaintiff SCI is a LLC whose sole member is a citizen of Mississippi, and Chaucer is organized under the laws of the United Kingdom with its principal place of business in London, England. Chaucer thus asserts that because "Certain Underwriters at Lloyd's London" does not exist, it was not required to consent to the removal of tis action, and its citizenship may be disregarded.

As noted *supra*, SCI seeks to have this case remanded to state court. SCI argues that courts have repeatedly observed

that Certain Underwriters at Lloyd's London is composed of separate syndicates that underwrite insurance in one marketplace known as Lloyd's of London, that each syndicate is composed of members or "names" that fund the insurance policy, and that for diversity purposes, each member or name must be completely diverse from the opposing party. SCI further asserts that because Defendant did not allege the citizenship of every member subscribing to the insurance policy at issue, this case is due to be remanded. Plaintiff further asserts that Chaucer cannot substitute itself for Defendant Certain Underwriters at Lloyd's London; thus, Chaucer lacks standing to remove this case.

## II. Analysis

### A. Standard of Review

A removing defendant has the burden of proving proper federal jurisdiction. See Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005)("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.")(citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.

1994). Furthermore, "once a federal court determines that is without subject matter jurisdiction, the court is powerless to continue." Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1092 (11th Cir. 2010)(internal quotes omitted). Where removal is predicated on diversity jurisdiction, the removing party bears the burden of establishing complete diversity of citizenship and of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (llth Cir. 1996), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F. 3d 1069 (llth Cir. 2000).

**B. Discussion**

As the removing defendant, Chaucer has the burden of establishing complete diversity of citizenship. Upon review, the undersigned finds that Chaucer has not carried its burden. The Eleventh Circuit's decision in Underwriters at Lloyd's London v. Osting-Schwinn, 613 F. 3d 1079 (llth Cir. 2010) is controlling in this case. Underwriters at Lloyd's, London involved a case in which Underwriters at Lloyd's London filed a diversity action seeking a declaratory judgment that an underlying lawsuit was barred by a prior settlement. The defendant sought dismissal for lack of subject matter jurisdiction because Lloyd's, London only disclosed the citizenship of the "lead underwriter". The trial court denied the request for dismissal and granted

Lloyd's, London's motion for summary judgment. The defendant appealed both rulings. Id. at 1081-1082. On appeal, the Eleventh Circuit explained that:

> The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market. . .Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members", assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies. . .Critical to the diversity jurisdiction question, Names are not only British citizens, but may be of many nationalities. Lloyd's Act 1982,c.14,pmbl.(5). Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy. . . .As mere administrative structures, the syndicates themselves bear no risk on the policies that they underwrite; the constituent Names assume individual percentages of underwriting risk. The Names are not liable for the risks that the other Names assume. Lloyd's Act, 1982,c.14 B 8(1).. . Lead underwriters, or active underwriters, serve as the public faces for particular syndicates. . . This [Lead] underwriter is usually the only Name disclosed on the policy, although the Lloyd's Policy Signing Office keeps records on the identity of each Name underwriting a policy. . . Crucially, each Name's liability is several and not joint. . . Through contractual agreement, the other Names that are members of the underwriting syndicates on the policy remain liable for their proportional share of any adverse judgments.

613 F.3d at 1083-1084.

After thoroughly explaining the Lloyds, London structure, and discussing the courts' long standing treatment of unincorporated associations for diversity purposes, the Eleventh Circuit held that the Lloyd's, London syndicates fall squarely

within the class of unincorporated associations, for which the pleading of every member's citizenship is essential to establishing diversity jurisdiction. Id. at 1089. The Court then concluded that a remand was required because "the record [did] not disclose the identity, let alone the citizenship, of the Names involved in the case. According to the Court, "without knowledge of that citizenship, it [is] impossible to say that complete diversity exists." Id. at 1092 (citation omitted).

The Underwriters at Lloyd's, London decision makes clear that in determining whether diversity jurisdiction exists in this case, the Court is required to determine the citizenship of each of the Names or members underwriting the insurance policy at issue. While Chaucer, as lead member or underwriter, has provided citizenship information for itself, it has not identified the other Names underwriting the policy nor has it provided information regarding their citizenship.

And, Chaucer's reliance on language in the Underwriters at Lloyd's, London decision whereby the court acknowledged that if an individual underwriter, proceeding in its individual capacity, satisfied the amount in controversy requirement, it would not appear that another underwriter's citizenship would be determinative, is misplaced. In Underwriters at Lloyd's, London, the Lloyd's, London underwriters were the plaintiffs as

opposed to the removing Defendants. Further, the Eleventh Circuit held that it was not necessary to reach that issue because it was not clear that the lead member intended to sue in its individual capacity. In this case, there is nothing in Plaintiff's complaint that indicates that in bringing this action based on Lloyd, London policy No. LEO 000 3114, Plaintiff intended to sue only Chaucer, the lead underwriter, who has a 38% stake in the policy. To the contrary, Plaintiff is suing for breach of the policy in total, as opposed to 38% of the policy. Accordingly, Defendant was required to identify all of the Names/members (underwriters) of the subject policy, and their citizenship so as to enable the Court to determine the existence of complete diversity. See Underwriters at Lloyd's, London, 613 F.3d. at 1092 ("Ultimately, "a remand [is] clearly . . required in this suit as currently constituted, since the record does not disclose the identity, let alone the citizenship, of the Names involved in the case..."); Advanced Sleep Center, Inc. v. Certain Underwriters at Lloyds London, 2015 U.S. Dist. LEXIS 87878 at *7 (E.D. La., July 7, 2015)("[A]s a result of [Lloyd's of London] distinct operating model, "when determining diversity of citizenship of the parties in a case involving Lloyd's of London, all the 'names' must be taken into consideration.""); Ayuso v. Certain Underwrites at Lloyd's of London, 2013 U.S. Dist. LEXIS 129347 at *12 (E.D. Mo., Sept. 11,

2013)("The record is simply insufficient to satisfy defendant Lloyd's obligation to show subject matter jurisdiction based upon diversity of citizenship of each individual ultimately financially responsible person or entity that makes up the identified syndicate."). Accordingly, Chaucer has failed to carry its burden of demonstrating diversity of citizenship; thus, the undersigned recommends that Plaintiff's motion to remand be granted, and that this action be remanded to the Circuit Court of Hale County.

Plaintiff requests that this Court impose costs and fees upon Defendants pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order. Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO & CLC, 900 F. Supp. 419, 422 (M.D. Fla. 1995). Thus, attorney's fees may be awarded even in the absence of a showing of bad faith. Id. at 421.

In Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005), the Supreme Court held that:

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual

> circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

Id. at 141 (internal citations omitted). Upon review, the Court finds that Defendant's removal was not objectively unreasonable. Accordingly, the undersigned recommends that Plaintiff's request for fees be denied.

**III. Conclusion**

For the reasons set forth above, the undersigned finds that Plaintiff’s Motion to Remand be granted, that Plaintiff’s Motion for Costs be denied, and that this action be remanded to the Circuit Court of Hale County.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**Notice of Right to File Objection**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.Civ.P. 72(b); S.D. ALA. GenLR 72(c). The

Parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interest of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **14th** day of **October, 2016.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**